M4KHAZAP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                          19 Cr. 610 (JGK)

 5   AVIRAM AZARI,

 6                                         Plea
                    Defendant.
 7   ------------------------------x

 8                                         New York, N.Y.
 9                                         April 20, 2022
                                           10:40 a.m.
10

11   Before:

12                   HON. JOHN G. KOELTL,

13                                         District Judge

14                        APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     OLGA ZVEROVICH
17        Assistant United States Attorney

18   MOSES & SINGER LLP
          Attorneys for Defendant
19   BY:  BARRY S. ZONE

20   Also Present:

21   Meir Turner, Interpreter (Hebrew)
     Shane Crumlish, FBI Special Agent
22   Caroline Ingold, FBI Analyst

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M4KHAZAP

1          (Case called)

2          MS. ZVEROVICH:  Good morning, your Honor.  Olga

3    Zverovich, for the United States, and I'm joined by FBI special

4    agent Shane Crumlish and FBI intelligence analyst Caroline

5    Ingold.

6          THE COURT:  Good morning.

7          MR. ZONE:  Good morning, your Honor.  Barry Zone for

8    Mr. Azari.  How are you today?

9          THE COURT:  Good morning.

10         THE INTERPRETER:  Hebrew interpreter for the court,

11   Meir Turner.

12         THE COURT:  Is your oath on file with the court?

13         THE INTERPRETER:  Yes, your Honor.

14         THE COURT:  Thank you.

15         I have a plea agreement.

16         MR. ZONE:  Your Honor.

17         THE COURT:  Yes.

18         MR. ZONE:  May I just briefly?

19         THE COURT:  Sure.

20         MR. ZONE:  My client wishes to apologize, and I the

21   same.  In jail he developed a pretty severe gastrointestinal

22   condition whereby every few seconds he burps.  It's intrusive,

23   so we just want to let the Court know that it's uncontrollable,

24   involuntary.  And of course, after we're done today, I'm going

25   to ask that the Court order medical attention.  For now, I just

M4KHAZAP

1    wanted to let you know what was going on here if you were

2    interrupted.  That's all, your Honor.

3          THE COURT:  Oh, thank you.  Of course I'll order

4    medical attention for the defendant.

5          Is he all right to proceed today?

6          MR. ZONE:  But for the burping, he is, your Honor.

7          THE COURT:  OK.  Could you keep your mask up.  Thanks.

8          All right.  I have a plea agreement dated December 6,

9    2021, which indicates that the defendant wishes to enter a plea

10   of guilty to Count One, Three, and Four of the indictment.  The

11   plea agreement is dated December 6, 2021.  I've marked it as

12   Court Exhibit 1.  It appears to be signed by Mr. Azari and

13   Mr. Zone today, April 20, 2022.

14         So, Mr. Zone, is that what the defendant wishes to do?

15         MR. ZONE:  Yes, your Honor.

16         THE COURT:  All right.  Mr. Fletcher, please

17   administer the oath to the defendant.

18         (Defendant sworn)

19         THE DEPUTY CLERK:  Please state your full name for the

20   record.

21         THE WITNESS:  Aviram Azari.

22         THE DEPUTY CLERK:  Please remain standing.

23         THE COURT:  Actually, Mr. Azari, you can sit down.

24   Make yourself comfortable.  Bring the microphone towards you,

25   speak into the microphone.  Thank you.

M4KHAZAP

```
1              Mr. Azari, do you understand that you're now under
2    oath and that if you answer any of my questions falsely, your
3    false or untrue answers may later be used against you in
4    another prosecution for perjury or making a false statement?
5              THE DEFENDANT:  Yes.
6              THE COURT:  Tell me your full name, please.
7              THE DEFENDANT:  Aviram Azari.
8              THE COURT:  How old are you?
9              THE DEFENDANT:  50.
10             THE COURT:  60?
11             THE INTERPRETER:  50.
12             THE COURT:  50.
13             How far did you go in school?
14             JUROR:  12th grade.
15             THE COURT:  Are you a citizen of the United States?
16             THE DEFENDANT:  No.
17             THE COURT:  I see that you're using an interpreter.
18   Do you fully understand the interpreter?
19             THE DEFENDANT:  Yes.
20             THE COURT:  Do you have any difficulty in
21   communicating with the interpreter?
22             THE DEFENDANT:  No.
23             THE COURT:  Are you now or have you recently been
24   under the care of a doctor or a psychiatrist?
25             THE DEFENDANT:  No.
```

M4KHAZAP

```
1          THE COURT:  Have you ever been treated or hospitalized

2    for any mental illness or any type of addiction, including drug

3    or alcohol addiction?

4          THE DEFENDANT:  No.

5          THE COURT:  In the past 24 hours, have you taken any

6    drugs, medicine, or pills, or have you drunk any alcohol?

7          THE DEFENDANT:  No.

8          THE COURT:  Is your mind clear today?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Are you feeling all right today?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do either counsel have any doubt as to the

13    defendant's competence to plead at this time?

14          MS. ZVEROVICH:  No, your Honor.

15          MR. ZONE:  I have no doubt, your Honor.

16          THE COURT:  Mr. Azari, Mr. Zone, your lawyer, has

17    informed me that you wish to enter a plea of guilty to Counts

18    One, Three, and Four of the indictment against you.  Is that

19    correct?

20          THE DEFENDANT:  Correct.

21          THE COURT:  Have you had a full opportunity to discuss

22    your case with your lawyer and to discuss the consequences of

23    entering a plea of guilty?

24          THE DEFENDANT:  Yes, I understood.

25          THE COURT:  Are you satisfied with your lawyer and his
```

M4KHAZAP

1    representation of you?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  On the basis of Mr. Azari's responses to

4    my questions and my observations of his demeanor, I find that

5    he is fully competent to enter an informed plea at this time.

6                    Now, Mr. Azari, before I accept any plea from you, I'm

7    going to be asking you certain questions.  My questions are

8    intended to satisfy me that you wish to plead guilty because

9    you are, in fact, guilty and that you fully understand the

10   consequences of your plea and, furthermore, that you are

11   pleading guilty knowingly and voluntarily and that there is an

12   independent basis in fact for your plea.

13                   Do you understand that?

14                   THE DEFENDANT:  I understood.

15                   THE COURT:  I'm now going to describe to you certain

16   rights that you have under the Constitution and laws of the

17   United States, which rights you will be giving up if you enter

18   a plea of guilty.  Please listen to me very carefully.  If

19   there is anything that I say that you don't understand, please

20   ask me to stop, and either I or Mr. Zone will explain it to you

21   more fully.

22                   All right?

23                   THE DEFENDANT:  Thank you.  Yes.

24                   THE COURT:  Now, Mr. Azari, under the Constitution and

25   laws of the United States, you have a right to a speedy and

M4KHAZAP

1    public trial by a jury on the charges against you which are

2    contained in the indictment.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  If there were a trial, you would be

6    presumed to be innocent, and the government would be required

7    to prove you guilty by competent evidence and beyond a

8    reasonable doubt.  You would not have to prove that you were

9    innocent at trial.

10             Do you understand that?

11             THE DEFENDANT:  I understood.

12             THE COURT:  If there were a trial, a jury composed of

13   12 people selected from this district would have to agree

14   unanimously that you were guilty.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  If there were a trial, you would have the

18   right to be represented by a lawyer, and if you could not

19   afford a lawyer, a lawyer would be provided to you free of

20   cost.

21             Do you understand that?

22             THE DEFENDANT:  I understood.

23             THE COURT:  In fact, Mr. Azari, you have a right to be

24   represented by a lawyer at trial and at every other stage of

25   the proceedings.  If you cannot afford a lawyer, a lawyer would

M4KHAZAP

1    be provided to you free of cost.

2              Do you understand that?

3              THE DEFENDANT:  I understand.

4              THE COURT:  If there were a trial, you would have the

5    right to see and hear all of the witnesses against you, and

6    your attorney could cross-examine them.  You would have a right

7    to have your attorney object to the government's evidence and

8    offer evidence on your behalf if you so desired, and you would

9    have the right to have subpoenas issued or other compulsory

10   process used to compel witnesses to testify in your defense,

11   and you would not be required to testify.

12             Do you understand all of that?

13             THE DEFENDANT:  I understand.

14             THE COURT:  If there were a trial, you would have the

15   right to testify if you wanted to, but no one could force you

16   to testify if you didn't want to, and furthermore, no inference

17   or suggestion of guilt could be drawn if you chose not to

18   testify at trial.

19             Do you understand that?

20             THE DEFENDANT:  I understand.

21             THE COURT:  Mr. Azari, do you understand each and

22   every one of the rights that I described to you?

23             THE DEFENDANT:  Correct, I have.

24             THE COURT:  Do you have any questions about any of

25   those rights?

M4KHAZAP

1          THE DEFENDANT:  No.

2          THE COURT:  Do you understand that by entering a plea

3    of guilty today, you are giving up each and every one of those

4    rights, that you were waiving those rights, and that you will

5    have no trial?

6          THE DEFENDANT:  Correct.

7          THE COURT:  Do you understand that you can change your

8    mind right now and refuse to enter a plea of guilty?  You don't

9    have to enter this plea if you don't want to for any reason at

10   all.

11         Do you understand that completely?

12         THE DEFENDANT:  I understand.

13         THE COURT:  Now, Mr. Azari, you've received a copy of

14   the indictment against you, is that correct?

15         THE DEFENDANT:  Correct.

16         THE COURT:  Has it been translated for you?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Did you discuss it with your lawyer?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand what you were charged

21   with in the indictment?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that if you did not

24   plead guilty, the government would be required to prove each

25   and every part, or element, of the charges against you beyond a

M4KHAZAP

1    reasonable doubt at trial?

2              THE DEFENDANT:  I understand, yes.

3              THE COURT:  Let me go over with you Counts One, Three,

4    and Four to make sure that you understand what you are charged

5    with, what the government would be required to prove beyond a

6    reasonable doubt at trial with respect to each of those

7    charges, and what the maximum sentence is with respect to each

8    of those charges.

9              So Count One charges a conspiracy to commit computer

10   hacking.  It charges -- the grand jury charges that from at

11   least in or about November 2014 through at least in or about

12   2019, Aviram Azari, the defendant, and others known and

13   unknown, willfully and knowingly combined, conspired,

14   confederated, and agreed together and with each other to commit

15   an offense against the United States, to wit, computer hacking,

16   in violation of Title 18, United States Code,

17   Sections 1030(a)(2)(C) and 1030(c)(2)(B).

18             It was a part and an object of the conspiracy that

19   Aviram Azari, the defendant, and others known and other known,

20   would and did intentionally access a computer without

21   authorization and exceed authorized access, and thereby obtain

22   information from a protected computer, to wit, the contents of

23   personal and business electronic accounts for purposes of

24   commercial advantage and private financial gain, and the value

25   of which information exceeded $5,000, in violation of Title 18,

M4KHAZAP

United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(B)(i) and (ii).

In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

In or about November 2014, two coconspirators not named herein, CC-1 and CC-2, caused to be sent emails to Aviram Azari, the defendant, stating that they have a team of email penetration experts, sophisticated developers for extracting files from computers who can get the backup of the email from any account and files from any Windows computer, and hoping that we can make some money working together.

The indictment goes on to list various other overt acts, including (b) in or about August 2016, CC-2 sent to a coconspirator not named herein, CC-3, an email containing letter invitations from CC-1 to Azari and CC-3 inviting them to India to conduct business meetings with our senior management.

(d) In or about June 2017, CC-1 sent Azari and CC-3 an email stating his team, after having sent phishing emails to Victim-2, an individual based in the Southern District of New York, had successfully hacked into two electronic accounts belonging to Victim-2 using a VPN server located in New York and attached screenshots of the attacked account.

Another overt, act in or about March 2018, CC-1 sent

M4KHAZAP

1  Azari and CC-3 an email stating his team, after having sent

2  phishing emails to Victim-1, an individual based in the

3  Southern District of New York, had successfully hacked into two

4  electronic accounts belonging to Victim-4 using a VPN server

5  located in New York, and attached screenshots of the hacked

6  account.  Various other overt acts are listed, all of this in

7  violation of Title 18, United States Code, Sections 371.

8          Mr. Azari, do you understand that that's what you are

9  charged with in Count One of the indictment?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if you did not

12  plead guilty, the government would be required to prove,

13  first -- would be required to prove beyond a reasonable doubt

14  at trial:

15          First, that two or more persons entered into the

16  unlawful agreement charged in the indictment starting in or

17  about November 2014;

18          Second, that you, the defendant, knowingly and

19  willfully became a member of the conspiracy;

20          Third, that one of the members of the conspiracy

21  knowingly committed at least one of the overt acts charged in

22  the indictment; and

23          Fourth, that the overt act or acts which the jury

24  found to have been committed was or were committed to further

25  some objective of the conspiracy.

M4KHAZAP

1          Do you understand the government would be required to
2    prove all of that beyond a reasonable doubt at trial?
3          THE DEFENDANT:  Yes, I understand.
4          THE COURT:  You understand that the maximum penalty
5    for the crime charged in Count One is a maximum term of five
6    years' imprisonment, a maximum term of three years' supervised
7    release, a maximum fine of the greatest of $250,000 or twice
8    the gross pecuniary gain derived from the offense or twice the
9    gross pecuniary loss to a person or persons other than yourself
10   as a result of the offense, and a $100 special assessment?  Do
11   you understand that's the maximum penalty for the crime charged
12   in Count One of the indictment?
13         THE DEFENDANT:  Yes.
14         THE COURT:  Count Three of the indictment charges wire
15   fraud.  In Count Three, the grand jury charges that from at
16   least on or about November 2014 through at least in or about
17   2019, Aviram Azari, the defendant, willfully and knowingly,
18   having devised and intending to devise a scheme, an artifice to
19   defraud, and for obtaining money and property by means of false
20   and fraudulent pretenses, representations, and promises, did
21   transmit and cause to be transmitted by means of wire, radio,
22   and television communication to interstate and foreign -- I'm
23   sorry, in interstate and foreign commerce, writings, signs,
24   signals, pictures, and sounds for the purpose of executing such
25   scheme and artifice, to wit, Azari made and caused to be made

M4KHAZAP

false and fraudulent emails sent to hundreds of victims located

in the Southern District of New York and elsewhere in order to

trick the victims into entering their usernames and passwords

to their electronic accounts into false and fraudulent websites

controlled by Azari and his coconspirators for the purpose of

obtaining unauthorized access to those electronic accounts, in

violation of Title 18, United States Code, Sections 1343 and 2.

Do you understand that that's what you were charged

with in Count Three of the indictment?

THE DEFENDANT:  Correct.

THE COURT:  Do you understand that if you did not

plead guilty, the government would be required to prove beyond

a reasonable doubt at trial that there was a scheme or artifice

to defraud or to obtain money or property by materially false

and fraudulent pretenses, representations, or promises as

alleged in the indictment; second, that you, the defendant,

knowingly and willfully participated in the scheme or artifice

to defraud with knowledge of its fraudulent nature and with

specific intent to defraud, or that you knowingly and

intentionally aided and abetted others in the scheme; and

third, that in execution of that scheme, you used or caused the

use of interstate wires as specified in the indictment?

Do you understand that the government would be

required to prove all of that beyond a reasonable doubt at

trial?

M4KHAZAP

1                THE DEFENDANT:  Yes.

2                THE COURT:  Count Four of the indictment charges

3    aggravated identity theft.  The grand jury charges that from at

4    least in or about November 2014 through at least in or about

5    2019, Aviram Azari, the defendant, knowingly transferred,

6    possessed, and used without lawful authority a means of

7    identification of another person during and in relation to a

8    felony violation enumerated in Title 18, United States Code,

9    Sections 1028A(C), and aided and abetted the same, to wit,

10   Azari possessed and used and aided and abetted the possession

11   and use of login credentials including usernames and passwords

12   of various individuals during and in relation to the wire fraud

13   offenses charged in Counts Two and Three of this indictment, in

14   violation of Title 18, United States Code, Sections 1028A(a)(1)

15   and (b) and Section 2.

16               Do you understand that's what you are charged with in

17   Count Four of the indictment?

18               THE DEFENDANT:  Yes.

19               THE COURT:  Do you understand that if you did not

20   plead guilty, the government would be required to prove beyond

21   a reasonable doubt at trial, first, that you, the defendant,

22   knowingly used or aided and abetted in the use of a means of

23   identification of another person; second, that you, the

24   defendant, used or aided and abetted in the use of the means of

25   identification during and in relation to the offense of wire

M4KHAZAP

1    fraud charged in Count Three of the indictment; and third, that

2    you, the defendant, acted without lawful authority?

3            Do you understand that the government would be

4    required to prove all of that beyond a reasonable doubt at

5    trial?

6            THE DEFENDANT:  Correct.

7            THE COURT:  Do you understand that the maximum penalty

8    for the crime charged in Count Four of the indictment is a

9    mandatory minimum term of two years' imprisonment, which must

10   be imposed consecutively to any other sentence; a maximum term

11   of one-year supervised release; a maximum fine of the greatest

12   of $250,000 or twice the gross pecuniary gain derived from the

13   offense or twice the gross pecuniary loss to persons other than

14   yourself as a result of the offense; and a $100 mandatory

15   special assessment?

16           Do you understand that's the maximum penalty for the

17   crime charged in Count Four of the indictment?

18           THE DEFENDANT:  Yes.

19           MS. ZVEROVICH:  Your Honor, I'm sorry to interrupt.  I

20   believe your Honor did not advise the defendant yet of the

21   maximum penalties for Count Three.

22           THE COURT:  Thank you.  I was just looking at my

23   notes, and I think you're absolutely right.

24           Mr. Azari, with respect to Count Three, the maximum

25   sentence for Count Three is a maximum term of 20 years'

M4KHAZAP

1    imprisonment, a maximum term of three years' supervised

2    release, a maximum fine of the greatest of $250,000 or twice

3    the gross pecuniary gain derived from the offense or twice the

4    gross pecuniary loss to a person or persons other than yourself

5    as a result of the offense, and a $100 mandatory special

6    assessment.

7            Do you understand that's the maximum penalty for the

8    crime charged in Count Three of the indictment?

9            THE DEFENDANT:  Correct.

10           THE COURT:  Do you understand that when I talk about

11   supervised release, supervised release means that you will be

12   subject to monitoring when you are released from prison, and

13   the monitoring is to be under terms and conditions which could

14   lead to re-imprisonment without a jury trial if you violate

15   them?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you understand that if you violated the

18   terms of supervised release and were sentenced to prison, you

19   could be sentenced to prison for the entire term of supervised

20   release without any credit for any time you had already spent

21   on supervised release?

22           THE DEFENDANT:  OK.

23           THE COURT:  Do you also understand that as part of

24   your sentence, I can also order restitution to any person

25   injured as a result of your criminal conduct?

M4KHAZAP

1              THE DEFENDANT:  Yes.

2              THE COURT:  The indictment also includes forfeiture

3     allegations.

4              THE INTERPRETER:  The interpreter's mic has died.  If

5     your Honor could bear with the interpreter for one second.

6     Thank you, your Honor.

7              THE COURT:  All right.

8              THE INTERPRETER:  The interpreter can hear now.

9              THE COURT:  OK.  Mr. Azari, the indictment includes

10    forfeiture allegations.  It provides that, as a result of

11    committing the offense alleged in Count One of the indictment,

12    Aviram Azari, the defendant, shall forfeit to the United

13    States, pursuant to Title 18, United States Code,

14    Sections 1030(i), any and all property, real and personal,

15    constituting or derived from any proceeds obtained directly or

16    directly as a result of said offense, and any and all personal

17    property that was used or intended to be used to commit or to

18    facilitate the commission of said offense, including but not

19    limited to a sum of money in United States currency

20    representing the amount of proceeds traceable to the commission

21    of said offense.

22              And as a result of committing the offenses alleged in

23    Counts Two and Three of this indictment, Aviram Azari, the

24    defendant, shall forfeit to the United States, pursuant to

25    Title 18, United States Code, Section 981(a)(1)(C), and Title

M4KHAZAP

1   28, United States Code, Section 2461(c), any and all property,

2   real and personal, that constitutes or is derived from proceeds

3   traceable to the commission of the said offenses, including but

4   not limited to a sum of money in United States currency

5   representing the amount of proceeds traceable to the commission

6   of said offenses.

7           And if any of that above-described forfeitable

8   property, as a result of any act or omission of the defendant,

9   cannot be located or has been transferred or placed beyond the

10  jurisdiction of the court or substantially diminished in value

11  or commingled with other property, then it is the intent of the

12  government to have you forfeit any other property that you have

13  up to the value of the forfeitable property.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  So do you understand that as a result of

17  your conviction, I can order forfeiture?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Now, Mr. Azari, you're pleading guilty to

20  three separate offenses, and you'll be separately sentenced on

21  each of those offenses.  I can order that the penalties, the

22  sentences for those offenses, be served concurrently, that is,

23  at the same time, or consecutively, that is, one right after

24  the other.  Except with respect to Count Four, I must order

25  that at least two years of that sentence, which is a mandatory

M4KHAZAP

1    two years, be served consecutively to the terms of imprisonment

2    on the other counts.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  So you're facing a total of 27 years'

6    imprisonment with a mandatory minimum term of two years'

7    imprisonment, which must be served consecutively to any other

8    sentence.

9              Let me put it a little differently.  You're facing a

10   total maximum term of imprisonment on Counts One and Three of

11   25 years, plus a mandatory minimum term of two years'

12   imprisonment on Count Four, which must be served consecutively

13   to the sentence on Counts One and Three.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you also understand that if I accept

17   your guilty plea and adjudge you guilty, that adjudication may

18   deprive you of valuable civil rights, such as the right to

19   vote, the right to hold public office, the right to serve on a

20   jury, and the right to possess any kind of firearm?  Do you

21   understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Now, you've told me that you're not a

24   citizen of the United States.  Do you understand that your

25   conviction can be used to remove you from the United States, to

M4KHAZAP

1  deny you citizenship, and to deny you admission to the United

2  States in the future?  Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Have you consulted with your lawyer about

5  the immigration consequences of your guilty plea?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Now, Mr. Azari, under current law there

8  are sentencing guidelines that judges must consult in

9  determining your sentence.  You've spoken to Mr. Zone about the

10  sentencing guidelines, haven't you?

11            THE INTERPRETER:  The interpreter missed the last

12  sentence, your Honor.

13            THE COURT:  I'm sorry?

14            THE INTERPRETER:  The interpreter missed the last

15  sentence.

16            THE COURT:  OK.  Mr. Azari, you've spoken to Mr. Zone

17  about the sentencing guidelines, haven't you?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you understand that I, as the

20  sentencing court, will not be able to determine your guideline

21  sentence until after the probation department has completed a

22  presentence report and after you and your lawyer and the

23  government have had an opportunity to review that report and to

24  challenge anything contained in that report and to bring those

25  challenges to my attention?  Do you understand that?

M4KHAZAP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you also understand that even after

3     it's determined what the basic guideline sentencing range is in

4     your case, I have the authority, in some circumstances, to

5     depart, upward or downward, from the sentence that is otherwise

6     called for by the sentencing guidelines?  Do you understand

7     that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Even after I've determined that guideline

10    sentencing range, taking into account any upward or downward

11    departures, I must then consider other statutory factors in

12    order to arrive at a final conclusion as to what the

13    appropriate and reasonable sentence is in your case.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you also understand that if you are

17    sentenced to prison, parole has been abolished, and you'll not

18    be released any earlier on parole?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that if your lawyer or

21    anyone else has attempted to estimate or predict what your

22    sentence will be, that their estimate or prediction could be

23    wrong?

24             THE DEFENDANT:  Yes.

25             THE COURT:  No one, Mr. Azari -- not your lawyer, not

M4KHAZAP

the government, no one -- can or should give you any assurance

of what your sentence will be since that sentence can only be

determined after the probation department has completed the

presentence report, after I have ruled on any challenges to the

report, and after I have determined what the appropriate and

reasonable sentence is in your case.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that even if your

sentence is different from what your lawyer or anyone else told

you that it might be or if it's different from what you expect

it to be, you will still be bound by your guilty plea, and you

will not be allowed to withdraw your plea of guilty?  Do you

understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, Mr. Azari, I've been given the plea

agreement which you heard me talk about at the outset, the

December 6, 2021, letter to Mr. Zone from the government.  I've

marked it as Court Exhibit 1.  It appears to be signed by two

lawyers for the government and then signed by you and Mr. Zone

today, April 20, 2022.

Have you signed this plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Did you read the agreement before you

signed it?

M4KHAZAP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Was it translated for you before you

3    signed it?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Did you discuss it with your lawyer before

6    you signed it?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Did you understand the agreement before

9    you signed it?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Does this letter agreement constitute your

12   complete and total understanding of the entire agreement

13   between the government, your lawyer, and you?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Is everything that you understand about

16   your plea and your sentence contained in this agreement?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Has anything been left out?

19             THE DEFENDANT:  Not to the best of my knowledge, no.

20             THE COURT:  Has anyone offered you any inducements or

21   threatened you or forced you to plead guilty or to enter into

22   this plea agreement?

23             THE DEFENDANT:  No, no one did.

24             THE COURT:  There is a provision in the plea agreement

25   that provides, on page 6, it is agreed that the defendant will

M4KHAZAP

1   not file a direct appeal nor bring a collateral challenge,

2   including but not limited to an application under Title 28,

3   United States Code, Sections 2255 and/or Section 2241, of any

4   sentence within or below the stipulated guidelines range of 132

5   to 159 months' imprisonment.

6           Do you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you understand that if I sentence you

9   to 159 months' imprisonment or less, you have given up your

10  right to appeal any such sentence or to challenge any such

11  sentence in any proceeding, including any habeas corpus

12  proceeding?

13          THE DEFENDANT:  Yes.

14          THE COURT:  The paragraph also provides that the

15  defendant further agrees not to appeal or to bring a collateral

16  challenge of any term of supervised release that is less than

17  or equal to the statutory maximum.  The defendant also agrees

18  not to appeal or bring a collateral challenge of any fine that

19  is less than or equal to $300,000.  And the defendant also

20  agrees not to appeal or bring a collateral challenge of any

21  special assessment that is less than or equal to $300.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  By the way, I already advised

25  you that I can order that the sentences be served concurrently,

M4KHAZAP

 1    that is, at the same time, or consecutively, that is, one right

 2    after the other, except for the mandatory two years on Count

 3    Four which must be served consecutively.  I can also order that

 4    the fines be added together, and I must order that the special

 5    assessments be added together.  So you're facing a special

 6    assessment of $300.

 7           Do you understand that?

 8           THE DEFENDANT:  Yes, I do.

 9           THE COURT:  The plea agreement also provides that, on

10    page 7, the defendant recognizes that if he is not a citizen of

11    the United States, and you say you are not, his guilty plea and

12    conviction make it very likely that his removal from the United

13    States is presumptively mandatory and that, at a minimum, he is

14    at risk of being removed or suffering other adverse immigration

15    consequences.

16           It goes on to provide that it is agreed that the

17    defendant will have no right to withdraw his guilty plea based

18    on any actual or perceived adverse immigration consequences,

19    including removal or denaturalization resulting from the guilty

20    plea and conviction.

21           It is further agreed that the defendant will not

22    challenge any conviction or sentence on direct appeal or

23    through litigation under Title 28, United States Code,

24    Sections 2255 and/or Section 2241 on the basis of any actual or

25    perceived adverse immigration consequences, including removal

M4KHAZAP

1    or denaturalization resulting from his guilty plea and

2    conviction.

3           Do you understand that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you also understand that the Court is

6    not bound by the plea agreement or by any provision in the plea

7    agreement?  The Court must make an independent determination of

8    the appropriate sentence in your case, and even if that

9    sentence differs from anything that's contained in the plea

10   agreement, you will still be bound by your guilty plea, and you

11   will not be allowed to withdraw your plea of guilty.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Zone, do you know of any valid defense

15   that would prevail at the trial of Mr. Azari?

16          MR. ZONE:  No, your Honor.

17          THE COURT:  Do you know of any reason why Mr. Azari

18   should not be permitted to plead guilty?

19          MR. ZONE:  I do not.

20          THE COURT:  Mr. Azari, please tell me what you did in

21   connection with the crimes to which you are entering a plea of

22   guilty.  Go slower.

23          THE DEFENDANT:  In the period between November 2014

24   and in and including 2019, I, together with others, managed an

25   investigation firm in Israel.  One of the services that we

M4KHAZAP

```
 1    provided to our customers was hacking into electronic email
 2    accounts.  In order to provide this service, we connected with
 3    a company that is located in India that specializes in this,
 4    and this company, in accordance with our request, attempted to,
 5    and in certain instances even succeeded, to enter -- to hack
 6    into email addresses of private individuals or companies, all
 7    this in accordance with the customer's request.
 8              Some of the details -- some of the private individuals
 9    and the companies are located in the Southern District of New
10    York and in other places.
11              I was aware that the Indian company obtained private
12    data of the account holders, such as the username and password.
13              THE COURT:  I'm sorry.  Hold on.  Hold on.
14              THE DEFENDANT:  And password.
15              THE COURT:  I'm sorry.  Was using it and?
16              THE INTERPRETER:  "Such information as the username
17    and the password."
18              THE COURT:  Go ahead.
19              THE DEFENDANT:  And even used them as in phishing, and
20    did so by sending emails, phishing emails, which was able to
21    obtain private data when the link was pressed.  The person
22    pressed on the link; that data came up.
23              The customers paid me for the services that we
24    provided, including hacking the emails, and I in turn paid the
25    Indian company.  I'm aware that the value of the hacking into
```

M4KHAZAP

1 | the email accounts was over $5,000.

2 |          THE COURT:  When you say that you were "aware that the

3 | value of hacking into the email accounts was over $5,000," does

4 | that mean over $5,000 was taken from the rightful owners of

5 | those email accounts without their permission?

6 |          THE DEFENDANT:  No.

7 |          THE COURT:  What do you mean, then, that the value of

8 | the hacking was over $5,000?

9 |          MR. ZONE:  May I have a moment, your Honor?

10 |          THE COURT:  Yes.

11 |          (Counsel conferred with defendant)

12 |          THE DEFENDANT:  What I mean is the following:  Our

13 | work was worth more than $5,000.  The value of our work was in

14 | excess of $5,000.

15 |          THE COURT:  What was the purpose of all of this

16 | hacking for which the value of your work was over $5,000?

17 |          THE INTERPRETER:  The interpreter couldn't hear.

18 |          THE DEFENDANT:  The intention, the goal, was to obtain

19 | data and evidence, and the customers paid more than $5,000 for

20 | this service.

21 |          THE COURT:  You're pleading guilty to at least a count

22 | of wire fraud and conspiracy to commit wire fraud, which was a

23 | scheme, an artifice to defraud, and for obtaining money and

24 | property by means of false and fraudulent pretenses,

25 | representations, and promises.  So you've explained to me the

M4KHAZAP

1    hacking scheme in which you were able to get unauthorized

2    access into people's email accounts and how customers paid you

3    for that service.

4              The question that I'm asking is what was the money and

5    property that was obtained by this hacking?

6              MR. ZONE:  Your Honor.

7              THE COURT:  Yes.

8              MR. ZONE:  May I have a word with the assistant for

9    one second?

10             THE COURT:  Sure.

11             (Counsel confer)

12             MS. ZVEROVICH:  Your Honor, if I may, with the Court's

13   permission, just proffer kind of the scheme with respect to the

14   wire fraud charge in Count Three, if that would be helpful?

15             THE COURT:  Sure.

16             MS. ZVEROVICH:  Your Honor, the scheme as charged is

17   that Mr. Azari caused the sending of false and fraudulent

18   phishing emails to multiple different victims, including

19   victims in the SDNY.  Those phishing emails were fraudulent,

20   and they induced the victims to click on those links, put in

21   their usernames and passwords, and as a result of that,

22   Mr. Azari and his coconspirators were able to gain access to

23   the contents of those email and other electronic accounts

24   belonging to the victims.  That's the property of which the

25   victims were defrauded, which have value because clients of

M4KHAZAP

1    Mr. Azari paid substantial sums of money for that service.

2         THE COURT:  So the property was the contents of the

3    email accounts?

4         MS. ZVEROVICH:  Correct, your Honor.

5         THE COURT:  All right.  Mr. Azari, you've said that

6    the victims were -- some victims were located in the Southern

7    District of New York.  You understand the Southern District of

8    New York includes Manhattan, the Bronx, Westchester, and some

9    northern counties, is that right?

10        THE DEFENDANT:  Yes.

11        THE COURT:  All right.  Does the government think that

12   I should ask any other questions of the defendant?

13        MS. ZVEROVICH:  No, your Honor.  The government would

14   just proffer, and I believe Mr. Zone would stipulate, that the

15   computers that were hacked as part of the scheme were protected

16   computers within the meaning of the statute, which is 18 U.S.C.

17   Section 1030; and further, with respect to the wire fraud

18   charge, that the scheme involved the use of multiple interstate

19   and foreign wires, including wires that passed through the

20   Southern District of New York.

21        THE COURT:  All right.  Mr. Zone, do you agree with

22   that and does Mr. Azari agree with that?

23        MR. ZONE:  Yes, your Honor.

24        THE COURT:  Mr. Azari, do you agree with that?

25        THE DEFENDANT:  Yes.

M4KHAZAP

1          THE COURT:  OK.  When you did the acts that you've

2    described to me, did you know that what you were doing was

3    wrong and illegal?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Will the government summarize

6    for me what the evidence would be at trial.

7          MS. ZVEROVICH:  Yes, your Honor.  At trial the

8    government would show the following:

9          The government would show that since at least November

10   of 2014 and through 2019, the defendant, Mr. Azari, and other

11   coconspirators, engaged in a widespread spear phishing and

12   computer-intrusion scheme which targeted hundreds of victims,

13   including victims who are located in the Southern District of

14   New York.

15         Azari, with the assistance of others, ran an

16   Israeli-based private intelligence and investigation firm.  And

17   the government would show that in order to gather intelligence

18   on behalf of their paying clients, Mr. Azari and other

19   coconspirators employed the services of various hacking groups,

20   including a group that was based in India, in order to gain

21   unauthorized access to email and other electronic accounts

22   controlled by specified victims.

23         The government would show that Mr. Azari and others

24   were paid by their clients for these hacking services and that,

25   in turn, Mr. Azari paid the hackers.

M4KHAZAP

1            The government would show that as part of the scheme,

2     in order to gain access to the victim's accounts, the hackers

3     sent phishing emails to the victims in order to trick the

4     victims into entering their usernames and passwords to the

5     victims' electronic accounts into false and fraudulent websites

6     that were controlled by members of the conspiracy.  The

7     conspirators would then use the stolen login credentials in

8     order to access the victims' electronic accounts without

9     authorization.

10           At trial the government would prove each of the overt

11    acts that are listed in the indictment, among others.

12           At trial the government's evidence would include email

13    search warrant evidence showing that Mr. Azari tasked specific

14    hackers with hacking electronic accounts of victims, as well as

15    communications among Azari and his coconspirators in

16    furtherance of those efforts, and communications among the

17    hackers discussing progress on the hacking of particular

18    accounts, including for victims located in the Southern

19    District of New York.

20           The government would also introduce email search

21    warrant evidence showing that Azari and others used stolen

22    usernames and passwords of actual persons in order to gain

23    unauthorized access to their electronic accounts in furtherance

24    of the offenses in Counts One and Three of the indictment.

25           The government would also introduce evidence,

M4KHAZAP

1    including email search warrant evidence, showing that the

2    purpose of the hacking was to get -- was intelligence-gathering

3    on behalf of paying clients of Mr. Azari, and that Mr. Azari

4    would in turn pay the hackers who completed the work.

5              And at trial the government would introduce invoices,

6    as well as wire transfer confirmations, which show that the

7    work that the hackers did on behalf of Mr. Azari and other

8    coconspirators resulted in payments in excess of $5,000.

9              THE COURT:  Would the government's evidence establish

10   the defendant's guilt of Counts One, Three, and Four of the

11   indictment beyond a reasonable doubt?

12             MS. ZVEROVICH:  Yes, your Honor.

13             THE COURT:  All right.  Mr. Azari, one question I

14   didn't ask you, in connection with the conspiracy in Count One,

15   the indictment lists numerous overt acts in furtherance of the

16   conspiracy.  To take one, in paragraph I it says:  In or about

17   July 2018, CC-1 sent Azari and CC-3 emails stating that his

18   team, after having sent phishing emails to Victim-6, an

19   individual based in the Southern District of New York, had

20   successfully hacked into four electronic accounts belonging to

21   Victim-6 using a VPN server located in New York, and attached

22   screenshots of the hacked accounts.

23             Did that happen?  Did you receive that email?

24             MR. ZONE:  Your Honor, he was just trying to read

25   along and lost you.

M4KHAZAP

1              THE COURT:  Yes.

2              MR. ZONE:  So --

3              THE COURT:  Paragraph I, it says:  In or about

4    July 2018, Coconspirator-1 sent Azari and Coconspirator-3

5    emails stating his team, after having sent phishing emails to

6    Victim-6, an individual based in the Southern District of New

7    York, had successfully hacked into four electronic accounts

8    belonging to Victim-6 using a VPN server located in New York,

9    and attached screenshots of the hacked accounts.

10             Did that happen?

11             THE DEFENDANT:  Yes.

12             THE COURT:  OK.  Mr. Azari, how do you plead to the

13   charge against you in Count One of the indictment, guilty or

14   not guilty?

15             THE DEFENDANT:  I'm guilty, your Honor.

16             THE COURT:  Mr. Azari, how do you plead to the charge

17   against you in Count Three of the indictment, guilty or not

18   guilty?

19             THE DEFENDANT:  Guilty.

20             THE COURT:  Mr. Azari, how do you plead to the charge

21   against you in Count Four of the indictment, guilty or not

22   guilty?

23             THE DEFENDANT:  Guilty.

24             THE COURT:  Are you pleading guilty voluntarily and of

25   your own free will?

M4KHAZAP

1          THE DEFENDANT:  I'm doing so voluntarily.

2          THE COURT:  And of your own free will?

3          THE DEFENDANT:  Yes, free will.

4          THE COURT:  Are you pleading guilty because you are,

5    in fact, guilty?

6          THE DEFENDANT:  Correct.

7          THE COURT:  Before I finally accept the defendant's

8    plea, Mr. Zone, do you want me to ask any other questions of

9    the defendant?

10         MR. ZONE:  I think you've covered everything, your

11   Honor.

12         THE COURT:  Do you know of any reason I should not

13   accept his plea?

14         MR. ZONE:  No, I don't.

15         THE COURT:  All right.  Before I finally accept the

16   defendant's plea, does the government want me to ask any other

17   questions of the defendant?

18         MS. ZVEROVICH:  No, your Honor.

19         THE COURT:  Does the government know of any reason

20   that I should not accept his plea?

21         MS. ZVEROVICH:  No, your Honor.

22         THE COURT:  Mr. Azari, because you acknowledge that

23   you are guilty as charged in Counts One, Three, and Four of the

24   indictment, because I find that you know your rights and are

25   waiving them knowingly and voluntarily, because I find that

M4KHAZAP

1    your plea is entered knowingly and voluntarily and is supported

2    by an independent basis in fact containing each of the

3    essential elements of the offenses, I accept your guilty plea,

4    and I adjudge you guilty of the offenses to which you have

5    pleaded.

6          Mr. Azari, the probation department will now prepare

7    the presentence report to assist me in sentencing you.  You'll

8    be interviewed by the probation department.  It's very

9    important that the information you provide to the probation

10   department be truthful and accurate.  The presentence report is

11   very important to me in my decision as to what your sentence

12   will be.  You and your lawyer will have the opportunity to

13   review the presentence report, to challenge anything contained

14   in the report, and then to speak on your behalf at sentencing.

15         Mr. Fletcher.

16         THE DEPUTY CLERK:  Thursday, July 21, at 11:30.

17         THE COURT:  Sentencing July 21 at 11:30, is that

18   satisfactory to both sides?

19         MR. ZONE:  Yes, your Honor.

20         MS. ZVEROVICH:  Yes, your Honor.

21         THE COURT:  OK.  I'd ask for the defense submission at

22   least 14 days before sentence and the government submission

23   eight days before sentence.

24         I will also enter an order asking the Bureau of

25   Prisons to make sure to take care of the defendant's medical

M4KHAZAP

 1    needs.

 2              MR. ZONE:  Yes, please, your Honor.  We've done

 3    everything possible to try to get him help.  They took him to

 4    the hospital, and then they took him back.  It's just -- all of

 5    my meetings with him have been like this.  It's been very

 6    frustrating, and he's in a -- it's real uncomfortable.  So if

 7    you could order that --

 8              THE COURT:  Absolutely, absolutely.  I'll ask for a

 9    report from the Bureau of Prisons with respect to the

10    defendant's medical care.

11              MR. ZONE:  Very grateful for that, your Honor.

12              THE COURT:  I'll also direct the government to make

13    inquiries of the MDC to find out what's happening with respect

14    to the defendant's medical care and to report back.

15              MS. ZVEROVICH:  Understood, your Honor.

16              THE COURT:  Government should report back by Monday,

17    but I'll still enter an order in any event.

18              All right.  Anything further?

19              MS. ZVEROVICH:  Nothing else from the government.

20    Thank you, your Honor.

21              MR. ZONE:  Nothing from the defense, your Honor.

22    Thank you.

23              THE COURT:  OK.  I'm returning Court Exhibit 1 to the

24    government.

25              (Adjourned)