

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

August 7, 2024

**By ECF**

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    ***United States v. Aviram Azari*, 19 Cr. 610 (JGK)**

Dear Judge Koeltl:

The Government respectfully submits this letter in opposition to defendant Aviram Azari's *pro se* motion ("Motion" or "Mot.") for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). As set forth below, Azari has not established extraordinary and compelling reasons justifying his early release and, in any event, the factors set forth in 18 U.S.C. § 3553(a) weigh against any such reduction. Accordingly, Azari's motion should be denied.

**I.   Background**

   **A.   Offense Conduct**

Azari, an Israeli citizen, operated an Israeli intelligence firm referred to as "Aviram Hawk" or "Aviram Netz." (Presentence Investigation Report ("PSR") ¶ 18; Dkt. 56). Clients hired Azari to manage various "Projects" that were characterized as intelligence-gathering efforts, but were, in fact, hacking efforts specifically targeting certain groups of victims. Some of the Projects targeted victims who were affiliated with the following causes or organizations: (1) climate change advocacy; (2) individuals and companies critical of the (now defunct) German-based payment processor Wirecard A.G.; (3) employees of the Bahamas gaming authority; (4) members of a Mexican political party; and (5) governmental officials from various African countries. (PSR ¶ 13).[1]

Once tasked with a Project, Azari employed the services of different hacking groups. (PSR ¶ 11). Azari facilitated the hacking scheme by directing groups of hackers, including a particular group of individuals based in India, to target specific victims' online accounts for hacking. (PSR ¶ 12). The hackers Azari hired would steal users' credentials, primarily by sending spearphishing

---

[1] This summary is merely representative and does not adequately capture the breadth and depth of Azari's spearphishing campaign. As an example, one email between Azari and the leaders of the hacking group in June 2016 identifies 42 active hacking Projects, listed in order of priority.

emails that were designed to appear as though they originated from trusted sources (such as Google, Yahoo, and Apple, or the victims' employers).

When the victims clicked on links in these spearphishing emails, they would be redirected to servers that appeared to be legitimate web pages, either for the provider in question or for the victim's employer but that were, in fact, controlled by the hackers. When the victims attempted to log in to those websites, the hackers would steal, or "harvest," the victims' credentials—including their usernames and passwords. The hackers then used the victims' stolen credentials to gain unauthorized access to the content of the victims' accounts—including their email accounts (both work and personal), social media accounts, and online storage accounts. The hackers updated Azari about their attempted and successful hacking efforts and transmitted the stolen data to Azari, who passed the stolen data along to his own clients. (PSR ¶ 15). The purpose of the hacking was intelligence-gathering on behalf of Azari's paying clients, and Azari paid the hackers whom he had hired to complete the work.

Azari processed payments he received from clients who hired his firm for the spearphishing campaigns through another of his companies, which was based in Cyprus. During the charged period, Azari generated approximately $4,844,968 in revenue for his intelligence-gathering efforts, which included the spearphishing Projects described above. Azari paid the hacking groups for their work using these client funds. (PSR ¶ 17).

Through its investigation, the Government has confirmed the successful hacking of more than 100 of Azari's victims, including victims located in the Southern District of New York. The Government also specifically identified more than approximately 200 additional targets of the hacking Projects that Azari managed. (PSR ¶ 15). However, the true number of individuals and entities around the world who were targeted by Azari and the hackers he hired during the course of the spearphishing and hacking scheme, many of whom have not yet been identified by the Government, is in the thousands. (Dkt. 56 at 3-4).

**B. Procedural History, Plea, and Sentencing**

On August 27, 2019, a sealed superseding indictment was filed in this District, charging Azari with conspiracy to commit computer hacking, in violation of 18 U.S.C. § 1030(a)(2)(C) and (c)(2)(B) (Count One); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Two); wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Count Three); and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (b), and 2 (Count Four). (PSR ¶¶ 1-5). Azari was arrested at JFK International Airport in New York on September 29, 2019. (PSR ¶ 19).

On April 20, 2022, Azari pleaded guilty to conspiracy to commit computer hacking (Count One), wire fraud (Count Three), and aggravated identity theft (Count Four), pursuant to a written plea agreement with the Government. (PSR ¶ 7).

On November 16, 2023, Azari appeared before this Court for sentencing. (Dkt. 79). The Court determined that Azari's Guidelines range was 94 to 111 months' imprisonment. (*Id.* at 4, 59). In assessing the Section 3553(a) factors, the Court explained that Azari's offense was "very serious":

> The defendant was responsible for arranging the hacking of thousands of individuals and entities. The hacking had a devastating impact on individuals and entities. It resulted in personal grief and anxiety for individuals.
>
> As a result, the defendant was paid $4.8 million over nearly five years, which was in turn paid, at least a portion, to those who actually did the hacking.

(*Id.* at 60). The Court credited Azari's argument that there were "substantial mitigating factors," noting, among other things, that Azari had been "incarcerated at the MCC and the MDC for over four years," and that "[t]he conditions at those institutions ha[d] been deplorable, including particularly severe conditions during the COVID epidemic." (*Id.*). The Court also considered that Azari had "suffered from gastrointestinal problems, which ha[d] not been adequately attended to while the defendant was incarcerated." (*Id.*). Based on its holistic assessment of the Section 3553(a) factors, the Court imposed a below-Guidelines sentence of 56 months' imprisonment on Counts One and Three, to run concurrently, and a mandatory minimum consecutive sentence of 24 months' imprisonment on Count Four, for a total sentence of 80 months' imprisonment, to be followed by three years' supervised release. (*Id.* at 61). The Court also ordered that Azari forfeit $4,844,968. (*Id.* at 65; Dkt. 76).

At sentencing, the Court "recommend[ed] that the Bureau of Prisons provide medical care for the defendant for his physical conditions." (Dkt. 79 at 63). The Court also recommended that Azari be designated to "FMC Devens, Massachusetts, or another facility capable of meeting the defendant's physical needs." (*Id.* at 67).

Azari, who has been detained since his arrest in late September 2019, is currently serving his sentence at FCI Fort Dix, and he is scheduled to be released on or about March 20, 2025.

## C.  Azari's Requests for Compassionate Release

On or about May 22, 2024, Azari submitted a request for compassionate release to FCI Fort Dix, arguing that his gastrointestinal condition required surgery, which had not been performed while he was in BOP custody, presenting an extraordinary and compelling circumstance warranting his release. The BOP has not yet responded to Azari's request.[2]

On or about July 15, 2024, Azari filed a *pro se* motion for compassionate release with this Court, seeking early release on the same principal basis—his gastrointestinal condition and the BOP's failure to perform surgery to address it. (Mot. at 1-2, 3-5, 10-11).[3] Azari also argues that his "unduly harsh" conditions of confinement warrant early release. (*Id.* at 8-9).

---

[2] The BOP advised the Government on August 7, 2024 that FCI Fort Dix is preparing a response to Azari's request.

[3] Azari's motion has not been filed on the public docket, but the Government received a copy of the motion from the Court.

## II.  Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute.  As relevant here:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

*Id.*  Thus, a court may grant compassionate release, assuming administrative remedies have been pursued as required, where there are "extraordinary and compelling reasons" warranting a sentence reduction, and the reduction is b o t h supported by the factors set forth in 18 U.S.C. § 3553(a) and "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*

Under the applicable policy statement in U.S.S.G. § 1B1.13, "[e]xtraordinary and compelling reasons exist" based on the defendant's medical circumstances if:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). . . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).[4]

As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence

---

[4] In *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), this Court concluded that the version of the applicable policy statement in effect at the time of the First Step Act's adoption applied only to motions filed by the Director of the Bureau of Prisons and therefore was non-binding on district courts addressing defendant-filed motions. *Id.* at 236 (interpreting then-applicable version of U.S.S.G. § 1B1.13). The relevant Guidelines policy statement was amended as of November 1, 2023, however, to fix the issue identified in *Brooker*, among other changes, abrogating *Brooker* as to compassionate release motions decided after that date. *See, e.g.*, *United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." *Id.*

reduction." (citing *Butler*)); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

## III.  Discussion

Because more than 30 days elapsed since Azari submitted his request for compassionate release to the BOP, he has satisfied the statutory exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  However, for the reasons set forth below, Azari has not demonstrated "extraordinary and compelling reasons" justifying his release.  Moreover, the Section 3553(a) factors weigh against reducing the sentence originally imposed by the Court, particularly considering that, in sentencing Azari to 80 months' imprisonment, the Court specifically considered Azari's medical circumstances and conditions of confinement.

### A.  Azari Has Not Established "Extraordinary and Compelling Reasons" Warranting Early  Release

Azari's principal basis for seeking compassionate release is his gastrointestinal condition. The Government acknowledges that Azari's gastrointestinal condition has been ongoing, is serious, and requires treatment.  The Government has been in communication with the BOP regarding Azari's condition and has requested and received Azari's BOP medical records, which are enclosed as Exhibit A to this submission.[5]  According to the medical records, Azari had a medical visit and evaluation with Dr. Ravi Sood, a general practitioner at FCI Fort Dix, on August 5, 2024, during which Dr. Sood recommended that Azari be evaluated by a gastroenterologist for his gastrointestinal condition.  (Exh. A at 6-7).

The Government respectfully submits that, while Azari's condition is serious and requires treatment, it does not qualify under the statute and applicable Guidelines policy statement as an extraordinary and compelling reason for early release.  In particular, Azari's condition does not satisfy the criteria set forth in U.S.S.G. § 1B1.13 for early release based on the defendant's medical circumstances.  Azari is not "suffering from a terminal illness." U.S.S.G. § 1B1.13(b)(1)(A).  Nor has Azari demonstrated that he is "suffering from a serious physical or medical condition . . . *that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover*."  *Id.* § 1B1.13(b)(1)(B) (emphasis added).  Azari also has not demonstrated that he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided *and without which the defendant is at risk of serious deterioration in health or death*."  *Id.* § 1B1.13(b)(1)(C).  Finally, Azari is not asserting any grounds for early release based on any "increased risk of suffering severe medical complications or death as a result of exposure to" the COVID-19 pandemic or any other "ongoing outbreak of infectious disease" or "public health emergency."  *Id.* § 1B1.13(b)(1)(D).

In sum, Azari has not shown that there are extraordinary and compelling reasons warranting his early release.  In particular, granting Azari's motion based on his medical condition would not be "consistent with applicable policy statements issued by the Sentencing Commission,"

---

[5] Because the medical records contain Azari's personal health information, the Government respectfully requests that they be filed under seal.

as required by the statute.  18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13(a)(3) (any reduction under 18 U.S.C. § 3582(c)(1)(A) must be "consistent with this policy statement").[6]

### B.  In Any Event, the Section 3553(a) Factors Weigh Against Azari's Early Release

Even if the Court were to conclude that Azari has raised an extraordinary and compelling reason to reduce his sentence, the Court must also consider and evaluate the Section 3553(a) factors.  *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").  In *United States v. Daugerdas*, for example, Judge Pauley denied compassionate release even though he found that the defendant there—who suffered from Type 2 diabetes, obesity, hypertension, and high cholesterol—established "extraordinary and compelling reasons."  No. 09-CR-581, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020).  Judge Pauley observed that the defendant had served only 37% of his sentence for very serious crimes, such that "[g]ranting Daugerdas's motion would do little to 'promote respect for the law' or 'provide just punishment for the offense.'"  *Id.* at *4; *see also id.* ("While this Court is cognizant of Daugerdas's need for medical care, that need alone is insufficient to warrant compassionate release, especially given the severity and duration of his criminal conduct.").

Here, the Section 3553(a) factors counsel against a sentence reduction.  As this Court recognized at Azari's sentencing, Azari's offense was serious and extensive: Azari "was responsible for arranging the hacking of thousands of individuals and entities," resulting in "devastating impact" on his victims, including "personal grief and anxiety for individuals." (Dkt. 79 at 60).  Three of these victims addressed the Court at sentencing.  (*Id.* at 45-59).  In exchange for wreaking devastation on his victims, "the defendant was paid $4.8 million over nearly five years, which was in turn paid, at least a portion, to those who actually did the hacking."  (*Id.* at 60).  At sentencing, this Court expressly took into account Azari's gastrointestinal condition, among other mitigating circumstances, and determined that a sentence of 80 months' imprisonment was just and necessary to satisfy the purposes of sentencing.  (*Id.* at 60-61).  The Government respectfully submits that this continues to be true today and counsels against granting Azari's motion for early release.

---

[6] The other factors cited by Azari, alone or in combination with his medical condition, also do not establish extraordinary and compelling reasons for a reduction in his sentence.  Azari argues that he has suffered "inhumane conditions of his confinement."  (Mot. at 8).  Azari does not explain which conditions he is referring to, but the Government understands him to be likely referring to the conditions at the MCC and the MDC, which the Court considered at the original sentencing. Azari has not alleged, much less established, that there are any conditions at FCI Fort Dix that amount to extraordinary and compelling reasons for early release.

## IV.  Conclusion

For the foregoing reasons, Azari's motion for early release should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

by:  __/s/_____
Olga I. Zverovich
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2514/2314

cc:    Aviram Azari (via Mail)

Exhibit A (Request to File Under Seal)